Duncan v. Sylvester.

SAMUEL DUNCAN *versus* GILMORE SYLVESTER & *al.*

Where the description in the deed commences with, "one undivided moiety or half part of a certain lot or tract of land, butted and bounded as follows," and proceeds with a particular recital of the metes and bounds of the lot, and concludes with these words, — "containing fifty-two acres and eighty rods and no more, and including the salmon fishery contiguous to said land," but an undivided half of the salmon fishery is conveyed.

A conveyance by one tenant in common of a specific part of the common real estate is void as against a co-tenant; and is not valid until such co-tenant gives notice to the grantee, that he elects to avoid it.

Where the plaintiff and defendant were tenants in common of a salmon fishery, the plaintiff is entitled to recover damages, in an action of the case, for a continued deprivation of the enjoyment of his rights, in being kept out of the occupation of any part of the fishery, after he was first deprived of it by the defendant, without having first regained possession by entry or otherwise.

The owner of land adjoining tide waters, becomes, by the ordinance of 1641, the proprietor of the flats to low water mark, not to exceed the distance of one hundred rods, subject to the free fishing of each householder in the waters covering them. But the householder, or citizen, does not thereby become entitled to place weirs, or other permanent erections, upon those flats, or to set his nets, or seines, "making them fast in the usual way by grapplings to the shore." These are advantages, often of great value, which the riparian proprietor has over others.

TRESPASS on the case against the defendants for cutting away the plaintiff's nets, and depriving him of his rights of salmon fishery from 1834 to the date of the writ in 1840.

To show his title, the plaintiff introduced a deed from Abner Knight to Samuel Duncan, dated July 19, 1819. It appeared also, that Sylvester was the owner of one undivided half of the premises, claiming under a deed from Abner Knight to George Knight, dated July 18, 1817, and a deed from George Knight to him, dated June 20, 1833, and that the plaintiff and said George had occupied and enjoyed the salmon fishery jointly, from July, 1819, to June, 1833, there being privileges for two strings of nets only.

The plaintiff proved, that on May 19, 1834, he went to said salmon fishery, and attempted to set his net; that the defendants were first there, and forbid the plaintiff from setting his

net, and denied his right to any part of it; that Sylvester had two strings of nets set; that the plaintiff proceeded to set his string of nets between those of Sylvester, "making them fast in the usual way by grapplings to the shore and moorings;" that the defendants cut the plaintiff's nets adrift; and that the defendants had occupied the whole privilege since.

Testimony was introduced on each side in relation to the income of the fishery and the damage.

The descriptive part of the deed from Abner Knight to George Knight, is given in the opinion of the Court. The deed from Abner Knight to the plaintiff, was of an undivided half of the same premises described in his deed to George Knight.

At the trial, before SHEPLEY J. the counsel for the defendants contended, that the conveyance from Abner Knight to George Knight included the whole of the salmon fishery. The Judge instructed the jury, that it conveyed only an undivided half.

The counsel for the defendants further contended, that although the plaintiff's action might be maintained, to recover damages for the wrongful act by which the defendants dispossessed and ousted him, he was not entitled to recover in this action damages for withholding the possession, until he first regained the possession by entry or otherwise.

And the defendants' counsel further contended, that the conveyance from George Knight to Gilmore Sylvester, being by metes and bounds, although voidable by Duncan, yet that the present action was not maintainable, unless Duncan had first elected to avoid said conveyance, and given Sylvester notice of his election, by entry or otherwise.

The Judge instructed the jury, that if they were satisfied from the evidence, that the defendants dispossessed the plaintiff, the foregoing positions of the defendants' counsel constituted no objection to the recovery by the plaintiff of damages for the whole period of time for which he was kept out by the defendants from the occupation of his undivided half of said fishery.

The verdict was for the plaintiff, and the defendants filed exceptions, which were allowed.

*W. G. Crosby* argued for the defendants. The grounds taken appear in the opinion of the Court.

In support of his position, that the resistance on the part of the defendants to the occupation by the plaintiff and denial of his right, amounted to an ouster, he cited Stearns on Real Actions, 41.

That one ousted cannot maintain trespass for a wrong done, after the disseizin and before re-entry. *Bigelow* v. *Jones*, 10 Pick. 164; Stearns, 409, 410; *Thomes* v. *Moody*, 2 Fairf. 141; *Allen* v. *Thayer*, 17 Mass. R. 302; *Maddox* v. *Goddard*, 15 Maine R. 222; *Porter* v. *Hooper*, 13 Maine R. 29; *Allen* v. *Carter*, 8 Pick. 177.

*F. Allen*, for the plaintiff, understood, that the only point on which the Court had any doubt was, whether the plaintiff could recover damages for the whole period. He contended strenuously, in a written argument, that the plaintiff might so recover; and cited Stearns on Real Actions, 13, 46, 150; Fitzherbert, 190, 191; Oliver's Precedents, 299 to 315; 15 Johns. R. 432; Buller's N. P. 70, 71, 73; 17 Mass. R. 289; 15 Mass. R. 472.

The opinion of the Court was drawn up by

SHEPLEY J. — This bill of exceptions presents three questions for consideration. 1. Whether the deed from Abner Knight to George Knight conveyed the whole or an undivided half of the salmon fishery. 2. Whether a conveyance made by one tenant in common of a portion of the common estate by metes and bounds be void as against a co-tenant, or valid until he give notice to the grantee, that he elects to avoid it. 3. Whether the plaintiff be entitled to recover damages for being kept out of the occupation of any portion of the salmon fishery, after he was deprived of it, without having first regained possession by entry or otherwise.

1. The description of the estate conveyed by the deed from Abner to George Knight, is "one undivided moiety or half

part of a certain lot or tract of land situate in Northport aforesaid, and butted and bounded as follows, viz. ;" it then proceeds with a particular recital of the metes and bounds of the lot, and concludes with these words, " containing fifty-two acres and eighty rods and no more, and including the salmon fishery contiguous to said land." Was the fishery included in the lot, half of which was conveyed, or included in the conveyance as a distinct portion of property ? There is no indication of an intention to convey two distinct pieces of property, the one being an undivided half of the lot, and the other the entire salmon fishery. The grammatical arrangement of the language is opposed to such a construction, and 'is suited to convey an undivided half of the fishery as a right appertaining to the lot. The word *containing*, is clearly connected with the word *lot*, or *tract*, as its substantive, showing, that the whole lot contained a certain number of acres and rods. The word *including*, is coupled to it, and must have the same antecedent, showing, that the lot included the fishery. No other construction can be admitted without doing great violence to the language.

2. It appears to have been held, in the case of *White* v. *Sayre*, 2 Ohio R. 110, that a tenant in common could legally convey a particular part of his undivided share of the estate. If this were admitted to be the established law, the other tenants in common, without any fault of their own, would be deprived of their right to enter and occupy every portion of the common estate, and of their right to have any portion of it thus conveyed, assigned to them on a partition of the common estate. Nor can the co-tenant justly be required to give notice to the grantee. If he were, he might become a trespasser, before he was aware of the existence of such a conveyance. He may entirely disregard it, and proceed to occupy any portion of the estate as freely as before such a conveyance, because it can have no legal effect upon his rights. *Bartlett* v. *Harlow*, 12 Mass. R. 348; *Mitchell* v. *Johnson*, 4 Conn. R. 495; *Cogswell* v. *Reed*, 3 Fairf. 198.

3. For the purpose of ascertaining, what damages the plain-

tiff may be entitled to recover, it may be well to determine, what right or property he had in the salmon fishery. The deeds, from which both parties claim to have derived their rights, assume to convey a salmon fishery as contiguous to the lot of land, which adjoins the Penobscot Bay. The verdict in this case, founded upon the testimony introduced, shows that such a fishery may be a valuable property, if it can have a legal existence. The State may regulate its navigable waters, and the fisheries within them; yet all the citizens are entitled as of common right to the fish in those waters; while each is bound to use this common right as not abusing it; and no one can unnecessarily interfere with or injure another in the use of the same right. It does not, however, follow, that each will be entitled to enjoy precisely the same or equally valuable rights. The owner of the land adjoining tide waters becomes, by the ordinance of 1641, the proprietor of the flats to low water mark, not to exceed the distance of one hundred rods, subject to the free fishing of each householder in the waters covering them. But the householder, or citizen, does not thereby become entitled to place weirs, or other permanent erections, upon those flats, or to set his nets or seines, "making them fast in the usual way by grapplings to the shore." These are advantages often of great value, which the riparian proprietor has over others. Having a common right with others to fish in those waters, he may, without any unreasonable exercise of that right, or improper interference with the rights of others, avail himself of these superior advantages. This is believed to be the foundation, upon which the valuable private rights or privileges of fishery, often conveyed and leased by one to another for no inconsiderable amount of money, rest. And their existence as private rights, appears to have been recognized in the legislation respecting the fisheries. The fishery in this case, described as contiguous to the land, appears to have been occupied since 1819, if no longer, as a privilege for two strings of nets only, which were made fast by grapplings to the shore. Since the year 1833, Ingraham Duncan and Gilmore Sylvester appear to have been the owners in com-

mon of the tract of land, to which this fishery was contiguous. In the month of April or May, 1834, Ingraham Duncan leased one-half of that fishery to the plaintiff. This would convey to him the right, in common with the owner of the other half, to use the privilege with the advantage of fastening his nets by grapplings to the shore. This right, so secured to him by lease, may be properly denominated an incorporeal heredita- ment, which is described in the books as a right issuing out of a thing corporate, or concerning, or annexed to, or exercisable within, the same. Thus a right of common, being a profit which one has in the land of another to pasture his cattle, to catch fish, to dig turf, to cut wood, to travel over, and the like, is an incorporeal hereditament. The lease or conveyance of a right to make grapplings fast to the shore, for the security of nets, can no more be considered as conveying title to any por- tion of the estate, than a conveyance of a right of way, or a right to dig turf could be. If one, who had a private fish pond upon his own land, should grant a piscary out of it with the right of fastening nets to the bank, such right or privilege would still be but an incorporeal hereditament. They would be properly so denominated, because in none of these cases would any title to the land pass to the grantee. Co. Lit. 4, (b.) ; Com. Dig. Piscary, A. They are rights merely, incor- poreal, intangible, incapable of a *pedis possessio ;* and pro- perly speaking, one cannot be dispossessed of them ; for they are always considered to be in the possession of those having a right of possession or enjoyment. Cruise's Dig. Tit. 35, c. 13, § 13. Of course, although one may be disturbed, or prevented from enjoying them, he can make no entry to regain posses- sion ; or maintain any action to regain possession of that, which the law adjudges to be already in his possession, and of which it declares, that he cannot be dispossessed. The objec- tion cannot therefore be a valid one, " that he was not entitled in this action to recover damages for withholding the possession, until he first regained the possession by entry or otherwise." And the authorities relied upon to support it cannot be appl-- cable to this description of property. An action on the case

is the proper remedy for one injured by the disturbance or deprivation of the enjoyment of an incorporeal hereditament. Com. Dig. Action on the case for a disturbance, A.; *Stocks* v. *Booth*, 1 T. R. 428. It may be maintained by a tenant in common of such a right, and he may recover damages against his co-tenant for a continued disturbance or deprivation of the enjoyment of it.

The case of *Atkinson* v. *Teasdale*, 3 Wil. 278, was an action on the case for the disturbance of a common of pasture by a tenant in common against his co-tenant. The declaration alleged a disturbance on a particular day, " and on divers other days and times between that day and the suing forth of the original writ." The plaintiff obtained a verdict, and judgment was entered upon it. The case was much contested and twice argued, but no objection was taken to the plaintiff's right to recover for the continued wrong. The case of *Blissett* v. *Hart*, Willes, 508, was a like action for the disturbance of a ferry, against one who had set up another ferry near to it. The declaration alleged the injury on a certain day, and continued on divers other days and times. The plaintiff had judgment. This also was a case much contested and twice argued on a motion in arrest of judgment. The forms for the disturbance of such rights in the best precedents for declarations, contain a clause for a continuance of the wrong. And there is little reason for requiring numerous actions to be brought for each disturbance, when entire redress may be obtained by one without a violation of any rule of law. It is difficult to perceive any sufficient reason for the application of a different rule to actions of this description from that, which prevails in actions on the case for other injuries, and in actions of trespass. And it is well settled, that entire damages may be recovered in the latter class of actions for a repetition and continuance of the injury, as well as for the first injurious act. The case of *Winsmore* v. *Greenbank*, Willes, 577, affords a remarkable instance of such a recovery in an action on the case, for enticing away the wife of the plaintiff, and inducing her to conceal herself from him, and for a continu-

ance of the injury from August 8, to December 24, 1742. The plaintiff obtained a verdict for heavy damages. The case was argued on a motion to set aside the verdict as against the evidence, and for excessive damages, and on a motion in arrest, and without success. The arguments to set aside the verdict do not appear in the report of the case. That it could not have escaped their notice, that damages were given for a continuance of the injury is apparent, for the opinion states a distinction in this respect between the commencement and the continuance of a nuisance ; that notice was required for its removal, before damages could be recovered for its continuance; and that such a rule was not applicable to that or other actions on the case for a different injury, " because every moment that a wife continues absent from her husband, it is a new tort." Indeed it would seem to be more reasonable to require one, who had been injured by several distinct acts of trespass, committed at different times by the same person, to commence different actions of trespass to recover his damages, than it would to require the plaintiff to commence several actions on the case for each separate injurious act, showing a continued deprivation of his right to enjoy the same fishery.

The policy of the common law and of our legislature is to prevent a multiplication of suits, whenever it can be done without introducing confusion of rights, surprise upon parties, or practical inconvenience, or injustice. And none of these results will be produced by allowing the plaintiff in this case to recover for a continued deprivation of the enjoyment of his rights.

It is further insisted in the argument for the defendants, that the plaintiff cannot recover against both the defendants for such a continued disturbance. It might be sufficient to observe, that such a point does not appear by the bill of exceptions to have been made during the trial. It is obvious, however, that if made, it must have presented a question of fact for the decision of the jury, whether both of the defendants continued to act together and to deprive the plaintiff of the enjoyment of his rights. And it does not appear, that any incorrect in-

structions were given respecting it, or that any requested, were refused. The bill of exceptions does not recite the testimony introduced in the case. There is no motion to set aside the verdict as against the evidence, and if there were, the Court has no means for determining, whether the jury were authorized by the testimony to find, that both the defendants were alike guilty. The jury were required by their instructions to find, that the plaintiff was kept out of the occupation of his half of the fishery by the defendants, not by one of them, during the whole time, for which the damages were assessed. There is nothing in the case authorizing the Court to determine, that they were not fully justified by the testimony in coming to that conclusion.      *Judgment on the verdict.*