Moonshine Company et al. v. E. Dunman et al.

Decided May 26, 1908.

**1.—Cotenants—Vendees—Partition—Equities.**

D. and C. were cotenants in a tract of land; C. sold a specific part of the tract by metes and bounds to M. and afterwards he sold undivided interests in the tract to different parties; these parties bought with notice of the prior

specific conveyance to M.; in a suit for partition between all the parties interested in the land, it appearing that the specific tract sold to M. could be set aside to him without prejudice to D., this should have been done without regard to the rights of the subsequent vendees of C. who bought with notice of the prior conveyance in severalty.

**2.—Appeal—Notice of Filing Brief.**

The failure on the part of the district clerk to give notice to an appellee of the filing of appellant's brief in his office, is not cause for dismissing the appeal, *in the absence of a showing that the appellee did not otherwise and in fact have notice of such filing in time to prepare and file a brief.*

Appeal from the District Court of Harris County.  Tried below before Hon. Lewis R. Bryan, Special Judge.

*Hutcheson, Campbell & Hutcheson* and *Campbell & Wren,* for appellants.—As to the general principle and rule in equity and its application to cases where one tenant in common conveys a specific part of the land held as tenants in common, see:  Arnold v. Cauble, 49 Texas, 529, 535; Camoron v. Thurmond, 56 Texas, 33; Steiler v. Hooper, 66 Texas, 353; Peak v. Swindle, 68 Texas, 253; Massie v. Yates, 29 S. W., 1132.

The full consideration having been paid, the instrument specifying that all right, title and claim of both the Dunmans and Conaway in said 2 3-10 acres of land is released to McAshan, and upon rendition of judgment in said cause in favor of said Dunmans and Conaway for said land, the decree shall be so drawn as to award the specific tract to McAshan, is, in law and equity, a valid contract of conveyance of the entire title of both the Dunmans and Conaway, and equity will not permit it to be defeated, because Conaway had no power to bind the Dunmans, when the facts show the entire title can be passed without infringing on the rights of the Dunmans.  See authorities under preceding proposition, also:  March v. Huyter, 50 Texas, 251; Rutherford v. Stamper, 60 Texas, 448; Hill v. Moore, 85 Texas, 347; Hanrick v. Gurley, 93 Texas, 470.

The court having found that the full rights of the Dunmans (tenants in common with Conaway) could be protected and leave the 2 3-10 acres and its product in the portion originally coming to Conaway, equity would require that the primary equitable rights in the whole 2 3-10 acres acquired by McAshan under instrument of October 22, 1904, should be protected by a primary assignment of said tract, and its product, to Conaway; that same might be decreed to the holders and owners of the said McAshan rights.  The judgment of the court, which forfeited one-half of the thing which McAshan had contracted and paid for, was inequitable and unjust, and wholly unwarranted by the facts.  Arnold v. Cauble, 49 Texas, 529, 535; Massie v. Yates, 29 S. W., 1132.

*J. W. Parker,* for appellee Brooks.

REESE, ASSOCIATE JUSTICE.—This is an appeal from a judgment partitioning among the several claimants a tract of 22 acres of land, together with the proceeds of certain oil produced therefrom.  The case was tried without a jury, and the trial court filed its conclusions of fact and law, the former of which are very complicated and voluminous.

None of the conclusions of fact are objected to in the assignments of error. Appellants excepted to the judgment.

So far as necessary to a proper understanding of the questions here presented the following statement is made from appellants' brief:

In August, 1904, A. L. Conaway, under power of attorney from the widow and heirs of J. W. Dunman (which conveyed to Conaway a half interest in the land), in his own name, and in the names of said widow and heirs, as plaintiffs, instituted this suit in trespass to try title against G. H. Hermann for 150 acres of land, including what was afterwards known as the 22 acres "disputed strip." In October, 1904, defendant G. H. Hermann filed answer and cross-bill, disclaiming all land sued for except said 22 acres "disputed strip," which, by cross-bill, he claimed against the plaintiffs and S. E. McAshan, J. B. Brockman and others, whom he made defendants in his cross-bill. Defendants Brockman and McAshan made contracts with the original plaintiffs, or some of them, protecting their respective rights in specific tracts of the 22 acres claimed by them, under which they assisted said original plaintiffs to defeat the claim of Hermann to said land. The case was tried with Hermann occupying the attitude of plaintiff on his cross-bill. On the trial of the case, by agreement between original plaintiffs, J. B. Brockmann and the owners of the McAshan rights, adjustment of rights as between them was waived and dismissed, until after the issue of title between said original plaintiffs and said Hermann should be finally determined.

Meantime, and before the trial of the case, on application of said Hermann, the court, on May 17, 1905, placed the whole 22 acres in the hands of a receiver, who caused same to be developed for oil, and rented out other parts, and since said May 17, 1905, the land and its product has been in the hands of receivers and producing revenue, and is now so in the receiver's hands and producing revenue. Before the receiver was appointed, intervener R. E. Brooks made lease of 7¼ acres of the land, both with the original plaintiffs and said Hermann, and developed that tract for oil and fully drained it of oil before the receiver was appointed. Brooks also made contract with Conaway, who purported to act for himself and the Dunmans, by which Brooks advanced $1,850 in cash upon royalty oil. McAshan, in December, 1904, deeded his 2 3-10-acre tract to the Moonshine Company and Campbell & Wren, and said company took actual possession of a part of the 2 3-10 acres (McAshan tract), and was so holding same for itself and Campbell & Wren when, in January, 1905, interveners Brooks, Warnecke, Fisher, Sears & Sherwood acquired their rights from Conaway alone. The contract of conveyance of the 2 3-10 acres (secured to McAshan) was made with A. L. Conaway, who signed same for self and as attorney in fact for the Dunmans, and is dated October 22, 1904. The contract for $1,850 advanced on royalty oil by R. E. Brooks was made with A. L. Conaway, who signed same for self and as attorney in fact for the Dunmans, and is dated January 31, 1905.

The issue of title between the original plaintiffs and Hermann was tried May 26, 1905, and resulted in judgment for the whole 22 acres in favor of said original plaintiffs against Hermann, which case was appealed, and on November 19, 1906, the judgment of the trial court was

affirmed by the Court of Civil Appeals. After affirmance of said judgment, and after report of receiver of December 10, 1906, Moonshine Company and Campbell & Wren, R. E. Brooks, J. B. Brockman, Warnecke, Fisher, Sears & Sherwood, J. A. Kirlicks and the Dunmans filed pleas, each claiming rights in the land and in the money in hands of receiver. Moonshine Company and Campbell & Wren claiming specific 2 3-10 acres, and its product; and all the other parties, except R. E. Brooks, contesting the claim of Moonshine Company and Campbell & Wren. From the judgment of the court upon the issues made by these interventions, decreeing to Moonshine Company and Campbell & Wren half the 2 3-10 acres and half its product, and apportioning the cost to be paid in proportion to money awarded, this appeal is prosecuted.

McAshan also had a deed from one Stansberry to a tract of 3¾ acres, which included the 2 3-10 acres hereinafter referred to, and had about ⅝ of an acre of the 2 3-10 acres enclosed within his fence around another tract of 12 acres adjoining, which he had bought of Stansberry, upon which was a residence.

Pending this suit with Hermann, A. L. Conaway for himself and as attorney in fact for the widow and heirs of J. W. Dunman, S. E. McAshan and Campbell & Wren entered into the following agreement:

"State of Texas,}
Harris County. }

"Whereas, in cause No. 34858 in the District Court of Harris County, Texas, Elizabeth Dunman, feme sole, widow of J. W. Dunman (and the other named Dunman heirs) and A. L. Conaway, as plaintiffs, are suing George H. Hermann, as defendant, for 150 acres of land in the James Strange survey in said Harris County, and whereas said defendant, G. H. Hermann, has, by cross-bill duly filed in said cause, disclaimed as to all of said land except a strip about 65 varas wide on the east side of the 150 acres claimed by said plaintiffs, and has set up title to said strip and declared in trespass to try title against said plaintiffs and a number of others, among them S. E. McAshan, and whereas said S. E. McAshan has employed Campbell & Wren, attorneys at law, to defend his interests in the only land claimed by him in said eastern strip, and said attorneys, Campbell & Wren, before preparing their pleas for the said McAshan, have, upon a conference with said plaintiffs in said suit, reached an agreement: This is executed to evidence such agreement, which is as follows:

"1. Said plaintiffs hereby release to said S. E. McAshan all claim, right and title which they have in and to the hereinafter described tract of 2.3 acres of land, more or less, and agree that, upon the rendition of judgment in said cause in their favor for such land, the decree shall be so drawn as to award to said McAshan said 2.3 acres, more or less, which is set out and described as follows:

"A tract of land in the James Strange survey in Harris County, Texas, beginning at a stake in the east line of the 12 1-3-acre tract of land deeded by Stanberry and wife to S. E. McAshan, which deed is recorded on pages 3 to 5 of vol. 147 of the deed records of Harris County, Texas, which stake and beginning point is 401 feet north of an iron stake set for the northeast corner of L. W. Long's 50-acre tract.

"Thence north with the east line of said 12 1-3-acre tract, 205.6 varas to the northeast corner of said 12 1-3-acre tract, being the northwest corner of the small tract herein described.

"Thence east 61½ varas to a stake in old marked line, the northeast corner of this tract.

"Thence south, parallel with the east line of said 12 1-3-acre tract, 205.6 varas to a stake for southeast corner of this tract.

"Thence west, 61½ varas to place of beginning.   Containing about 2.3 acres, more or less.

"And in consideration of the said release of the said plaintiffs and agreement aforesaid, said 'Campbell & Wren shall remain in said case as attorneys for said McAshan, but, in so doing, shall aid and assist the plaintiffs to maintain their title to said eastern strip of land so set out and claimed by said G. H. Hermann, against the claims of said Hermann and all other parties to said suit, and this to be without charge or expense for fees or services to be made upon plaintiffs by said Campbell & Wren.

"Executed in triplicate, this 22d day of October, 1904.

"(Signed) A. L. Conaway for self.   Campbell & Wren.
A. L. Conaway, attorney in
fact for widow and heirs
of J. W. Dunman.

S. E. McAshan.
per Campbell & Wren.
per J. W. Campbell."

Thereafter Campbell & Wren and S. E. McAshan carried out the obligation placed upon them by said contract by assisting Dunman and Conaway in every way they could to defeat the claim of Hermann.

McAshan conveyed one-half of the 2.3 acres to Campbell & Wren and the other half to the Moonshine Company.   McAshan had tenants on the property up to the time he conveyed it, and the Moonshine Company, holding also for Campbell & Wren, occupied the property by tenants during the time the rights of the other parties hereto accrued.

Brockman's title to 5 acres off of the north end of the 22 acres is admitted by all parties.

After agreement aforesaid between 'Conaway, McAshan and Campbell & Wren, Conaway, on January 16, 1905, conveyed an undivided half of his interest to Warnecke, and on the same day Conaway and Warnecke conveyed to Fisher, Sears & Sherwood an undivided one and one-half acres of the 22 acres.

On January 27, 1905, Conaway for himself and the Dunmans for themselves leased to R. E. Brooks 7¼ acres of the land for ¼ of the oil produced, under which lease certain oil was produced by Brooks, the ¼ royalty of which was partitioned among the parties, but as appellants here claimed and received none of this oil in the partition that matter is immaterial to be considered here.   On January 31, 1905, Conaway for himself, and as attorney in fact for the Dunmans, and W. G. Sears sold and conveyed the south half acre of the 22 acres to R. E. Brooks.   On December 3, 1906, Conaway conveyed an undivided ⅛ interest in the 22 acres to J. A. Kirlicks.

The court finds that the conveyances by Conaway did not affect the rights of the Dunmans as, under his power of attorney, he had no right to convey, and that all of the parties claiming under Conaway subsequent to the contract or agreement between Conaway, McAshan and Campbell & Wren had notice of this contract and agreement at the time their rights accrued.

In the hands of the receiver appointed by the court there were the proceeds of certain oil produced off of the land, including that produced off of the 2.3 acres. In the partition the land was divided as follows:

To Brockman, 5 acres; and to Brooks, ½ acre; and Dunmans, 8½ acres; Fisher, Sears & Sherwood, 1 acre; Warnecke, 2.925 acres; J. A. Kirlicks, 1.4625 acres; A. L. Conaway, 1.4625 acres; to Moonshine Company and Campbell & Wren, 1.15 acres, being one-half of the 2.3 acres embraced in the contract referred to. Campbell & Wren and the Moonshine Company were also given one-half of the oil produced on the 2.3 acres, and the Dunmans one-half.

The court found that, as between the Dunmans and appellants, the land and money could be so partitioned as to give appellants the entire 2.3 acres embraced in their contract with Conaway and the entire net product of oil therefrom without detriment to the rights of the Dunmans, but that such a division would be detrimental to the interests of the other parties, who had acquired rights under Conaway. The court, however, allowed appellants only the undivided half of the 2.3 acres and the product thereof, giving the Dunmans the other half.

It is not questioned on this appeal by any of the assignments of error that the contract or agreement between Conaway, McAshan and Campbell & Wren was in legal effect only the deed of Conaway as tenant in common to a specific part of the land held in common by himself and the Dunmans.

The assignments of error present the question, whether under the facts the court erred in refusing to set aside to appellants as their share, the entire 2.3 acres and the net product thereof under the finding that this could be done without detriment to the rights of the Dunmans as tenants in common with Conaway.

It may be taken, we think, as settled law that where one tenant in common of land conveys a specific portion entire of the whole tract, in a partition of the tract his vendee should be allotted, in its entirety, the portion sold and conveyed to him, if this can be done without detriment to the rights or interests of the other co-tenants. (Arnold v. Cauble, 49 Texas, 529; Peak v. Swindle, 68 Texas, 253.)

If Conaway had made no other conveyances of his part of the land than that to appellants, we suppose it would not be disputed that under this equitable rule appellants would have been entitled, under the fact found by the court that such could be done without detriment to the rights or interests of the Dunmans, to have the entire 2.3 acres, together with the product thereof, partitioned to them as part of Conaway's one-half interest. This right attached to the conveyance to them by Conaway, and we do not think they were deprived of it by the subsequent transfers of undivided interests in the land to the other parties to the partition, all of whom acquired their interests with notice of the contract whereby appellants acquired the 2.3 acres, and consequently with notice of all

of the equities attaching to, and inhering in, the contract. These subsequent transferees were put upon inquiry as to the source of Conaway's authority to transfer any title except his own, and were affected with notice that the contract executed by him was not binding upon the Dunmans. They therefore had notice of all of the legal and equitable rights growing out of such a conveyance. One of these rights was to have the land so partitioned that this 2.3 acres should be allotted to appellants, if it could be done without detriment to the rights of the Dunmans, as cotenants of Conaway. This was the condition when the other subsequent purchasers acquired their rights with knowledge thereof, and they must be held to have taken subject thereto. In Freeman on Cotenancy and Partition (section 212) it is stated that "the right of different grantees in severalty of distinct parcels from the same cotenant are equal, irrespective of the dates of the several grants." An examination of the text, however, and of the only case cited in support, shows that the author refers to such successive conveyances by one claiming, in fact, the whole estate, which claim had to be yielded to one claiming a part as cotenant. It might be that in such case the rights and equities of each are equal. (Dennison v. Foster, 9 Ohio, 130). In 21 Am. & Eng. Ency. of Law (p. 1168) it is stated that "in case of a mortgage given by a tenant in common to a specific part of the common property, describing it by metes and bounds, the mortgagee has an equity to require that partition should be so made as to allot the specific portion covered by the mortgage as the share of the mortgagor, provided this can be done without prejudice to the rights of the others. And this equity where there are several successive mortgages inures to each of the mortgagees in the order of the dates of the several mortgages." The rule would be the same in case of successive conveyances. (Kennedy v. Boykin, 28 Am. St. Rep., 838; Young v. Edwards, 26 Am. St. Rep., 689.)

The equities of appellants to have the entire 2.3 acres and the product thereof allotted to them are peculiarly strong. The agreement with Conaway was made in the pending litigation with McAshan, who was in possession claiming this land and much more. By this settlement and agreement both Conaway and his cotenants, the Dunmans, got rid of McAshan's adverse claim, and they also secured the services of McAshan and appellants, Campbell & Wren, in their pending contest with Hermann. The entire consideration of this contract inured equally to the benefit of all the cotenants, the Dunmans as well as Conaway, and it was a part of this agreement that this 2.3 acres should be awarded in the decree in the case, to appellants, and this agreement was made in the pending litigation, instituted and prosecuted with full authority, by Conaway for himself and the Dunmans.

We think that the entire 2.3 acres should have been allotted to appellants, together with the net product of the oil therefrom, since to do so would not prejudice the rights of the Dunmans, as found by the court.

The record is not such that we are able to render such judgment as should have been rendered in the court below, therefore the judgment is reversed and the cause remanded with instructions that the land, and money in the hands of the receiver, be so divided that appellants have allotted to them the 2.3 acres embraced in the contract of October 22,

1904, between Conaway, McAshan and Campbell & Wren, together with the net product of the oil produced therefrom, the rights and equities of the other tranferees from Conaway, that is, R. E. Brooks, J. A. Kirlicks, Fisher, Sears & Sherwood, Warnecke, and of Conaway, if he has any interest left, growing out of their proportionate interests, being adjusted out of the remainder of the land and money, after taking out the shares of appellants and allowing to the Dunmans the one-half allotted to them by the judgment, of which no complaint is made and which is not disturbed, nor is the judgment allowing Brockman the north 5 acres held by him under both the Dunmans and Conaway.

The manner of apportioning the costs by the trial court will not be disturbed.

Nor is the judgment in any respect disturbed, except as may be made necessary in adjusting the respective rights of the parties to the new conditions arising from the correction herein directed as to the appellants. Let the decree be entered in accordance with this opinion.

None of the appellees except R. E. Brooks filed briefs. The other appellees move the court to dismiss the appeal on the ground that they did not receive from the district clerk the notice required by statute of the filing of brief of appellants in the District Court. It does not appear that they did not have notice otherwise in ample time to prepare and file briefs if they had so desired. The motion is refused.

*Reversed and remanded.*