STANOLIND OIL & GAS CO. et al. v. SIMPSON–FELL OIL CO. et al.

No. 3223.

Court of Civil Appeals of Texas. El Paso.

June 6, 1935.

Rehearing Denied July 11, 1935.

Turner, Rodgers & Winn and Carlton R. Winn, all of Dallas, for appellant Stanolind Oil & Gas Co.

Thompson, Knight, Baker & Harris and Lewis M. Dabney, all of Dallas, for appellant Simms Oil Co.

Brachfield & Wolfe, of Henderson, and John Broughton, Walter C. Clemons, and John E. Green, Jr., all of Houston, for appellant Gulf Production Co.

Edwin Lacy, Angus Wynne, and Jack E. Price, all of Longview (Jack E. Price, of Longview, of counsel), for appellee Will H. Smith.

Harris & Harris, of Austin, and Carroll E. Florence and Milton Greer Mell, both of Gilmer, for appellee Simpson-Fell Oil Co. et al.

Fred V. Hughes, of Tyler, on rehearing, for all appellees.

HIGGINS, Justice.

This is an appeal by Stanolind Oil & Gas Company, Simms Oil Company, and Gulf Production Company, defendants in the court below, from a judgment in favor of Simpson-Fell Oil Company and Will H. Smith, plaintiffs below. By such judgment said plaintiffs recovered of said defendants and others not necessary to mention the title and possession of a one-eighth undivided interest in an oil, gas, and mineral leasehold estate in and under the south 200 acres of a rectangular 258-acre tract of land in the Wm. Tyndale survey in Gregg county. The leasehold estate recovered is that created by an oil and gas lease dated October 6, 1931, executed by Leland Fikes to Simpson-Fell Oil Company, Will H. Smith, and Simon Westheimer.

The 258-acre tract in 1908 was conveyed to W. E. Howell for a recited consideration of $1,500. At that time the grantee was a resident of Illinois. His wife was Mary E. Howell. They had four children, one of whom was Carrol B. Howell, a son. August 11, 1911, Howell and wife conveyed to L. A. Jeter 13¼ acres out of the northeast corner of the tract. August 18, 1911, Jeter conveyed to W. E. Howell 5½ acres out of the Crosby survey. In 1927 Mrs. Howell died. Prior thereto, Carrol B. Howell had died leaving a minor son, Jack Howell, as his sole heir.

In 1913 Howell and his family moved to Texas and lived upon the land until about 1915 when they returned to Illinois where they continued to live.

November 1, 1929, W. E. Howell contracted to sell and convey to F. M. Fonville the 5½ acres out of the Crosby survey and all of the 258-acre tract except the 13¼ acres theretofore sold to Jeter. Pursuant to this contract, W. E. Howell and his three adult children, on November 27, 1929, executed deed to Fonville for an undivided seven-eighths interest in said

lands. On the same date W. E. Howell, acting as guardian of the estate of Jack Howell, by authority of guardianship proceedings in Illinois, executed deed purporting to convey to Fonville an undivided one-eighth interest in said lands owned by the minor.

December 29, 1930, Fonville executed an oil, gas, and mineral lease (recorded in vol. 64, p. 129) in favor of D. A. Burris purporting to convey a full leasehold estate in all of the 258-acre tract except said 13¼ acres in the northeast corner.

January 2, 1931, Burris assigned to Simms Oil Company his leasehold estate in the south 100 acres of the 258-acre tract.

February 18, 1931, the Simms Oil Company assigned to Stanolind Oil & Gas Company one-half of the leasehold estate in said south 100 acres.

January 2, 1931, Burris assigned to Gulf Production Company his leasehold estate in the 100 acres out of the 258-acre tract immediately north of and adjoining the 100 acres theretofore assigned by Burris to Simms Oil Company.

February 4, 1931, Burris assigned to Magnolia Petroleum Company his leasehold estate in the balance of the 258-acre tract, less the above-mentioned 13¼ acres out of the northeast corner. This instrument is recorded in vol. 66, p. 396. Said oil companies went into possession and are producing oil from the respective parcels leased to them.

In 1931, C. E. Florence applied to the county court of Smith county, Tex., for letters of guardianship upon the estate of the minor Jack Howell. The court on June 15, 1931, so appointed Florence who, on the same date, qualified and filed inventory and appraisement of the estate which was approved.

Acting under orders of the probate court of Smith county, the guardian on July 28, 1931, executed deed to Leland Fikes conveying for $30,000 cash the one-eighth undivided interest of the minor in the 5½ acres out of the Crosby survey and the 258-acre tract out of the Tyndale survey, less the 13¼ acres conveyed to Jeter.

July 31, 1931, Fikes granted, leased, and let to the Magnolia Petroleum Company for the purpose of producing oil, gas, and other minerals, etc., the following described land in Gregg county, Tex., to wit:

"Fifty-eight (58) acres of land off of the North end of a 258 acre tract of land, a part of the Tyndale Headright Survey and the Crosby Survey, Gregg County, Texas, West of the town of Longview, which said 258 acre tract of land is composed of two (2) parcels as follows:

"Tract No. 1. Some 245 acres, more or less, a part of the Tyndale Headright Survey.

"Tract No. 2. Some 5½ acres out of the Crosby Survey, which said tract of land is described and set forth in an Oil and Gas lease dated December 29, 1930, by and between F. M. Fonville and Ida M. Fonville, Lessor, and D. A. Burris, Lessee, said lease being recorded in Book 64, page 129, Deed Records of Gregg County, Texas, reference to which is here made for further description of the land herein leased, and said land hereby leased is the selfsame and very land covered by and included in a certain assignment of Oil and Gas Lease dated February 4, 1931, from D. A. Burris, Lessee, to Magnolia Petroleum Company, said assignment being recorded in Vol. 66, page 396, Deed Records of Gregg County, Texas, reference to which is here made for a full description of the land herein leased, it being the intention to include all land owned or claimed by lessor in the above described land, whether correctly described or not." This instrument is recorded in Deed Records, Vol. 96, p. 450.

October 6, 1931, Fikes executed a similar lease to Simpson-Fell Oil Company, Will H. Smith, and Simon Westheimer covering "all that certain tract of land situated in the County of Gregg, State of Texas, described as follows, to-wit: All my right, title and interest in the same being one-eighth in the following described property in the Wm. Tyndale Survey, and beginning (here follows field notes of the 258 acre tract) containing 258 acres of land, more or less, save and except 13¼ acres of land conveyed by Wm. Edw. Howell, et ux., to L. A. Jeter on August 11th, 1911, out of the N E C of same, save and except that property heretofore leased by Leland Fikes to Magnolia Petroleum Company under date July 31st, 1931, and filed for record on August 3, 1931, file No. 22087 in the office of the County Clerk of Gregg County, Texas, to which reference is here made."

Westheimer assigned his interest in the lease last mentioned to Simpson-Fell Oil Company and Will H. Smith. It is upon this oil and gas lease the appellees Simpson-Fell Oil Company and Smith recovered in this case.

December 14, 1931, Simpson-Fell Oil Company and Smith filed this suit against F. M. Fonville and wife, Leland Fikes, and appellants. The suit was for partition, it being alleged the parties were joint owners of the oil, gas, and other minerals in the 258-acre tract except in the 13¼ acres conveyed to Jeter and the property theretofore leased by Fikes to Magnolia Petroleum Company on July 31, 1931. It was alleged the plaintiffs owned one-eighth of the oil, gas, and other minerals and the defendants jointly owned the other seven-eighths interest. Mrs. Fonville died and her children were made parties. The petition was later amended so as to sue for partition of the oil, gas, and other minerals alleging that plaintiffs own an undivided one-eighth interest and defendants the other seven-eighths interest. Alternatively, and in the event only defendants denied that plaintiffs and defendants were joint owners, then in such event plaintiffs sue in trespass to try title to recover a one-eighth undivided interest in the oil, gas, and other minerals.

Fikes filed a cross-action impleading W. E. Howell, C. E. Florence, and First National Bank of Gilmer, Tex., upon allegations that the consideration, $30,000 paid by him to C. E. Florence, was then on deposit in the First National Bank of Gilmer, and in view of the suit of the plaintiffs he stood in imminent danger of the loss of the title and asked that these parties be restrained from transferring these funds, pending the outcome of this suit. This controversy was severed from case at bar.

Fikes also joined the Magnolia Petroleum Company as a party defendant seeking reformation of the oil and gas lease to him of date July 31, 1931. The controversy between Leland Fikes and Magnolia Petroleum Company was severed and in February, 1933, a judgment was entered in said severed cause. Omitting preliminary recitals, this judgment reads:

"And then came the plaintiff Leland Fikes in person and by attorney, and the defendant Magnolia Petroleum Company in said severed cause of action and thereupon announced ready for trial and the matters of fact as well as of law were submitted to the court. Having heard the testimony upon said severed cause of action and argument of counsel, the court finds:

"(a) That plaintiff, Leland Fikes, on and after July 28, 1931, under and by virtue of a deed to him, made by C. E. Florence, guardian for Jack Howell, a minor, asserted claim of title to 1/8th undivided interest in and to a tract of land approximately 258 acres, more or less, as in said deed described, in the Tyndale and Crosby Survey, Gregg County:

"(b) That Magnolia Petroleum Company asserted and claimed an oil, and gas and mineral leasehold estate in and to the north 58 acres of said tract of land under and by virtue of an oil and gas lease, dated December 29, 1930, executed by F. M. Fonville and wife to D. A. Burris, lessee, recorded in Book 64, page 129, Deed Records of Gregg County, and an assignment of said leasehold as to said 58 acres from D. A. Burris, lessee, to Magnolia Petroleum Company, dated February 4, 1931, recorded in Volume 66, page 396, Deed Records of Gregg County, Texas;

"(c) That the plaintiff, Leland Fikes, thereafter on July 31, 1931, at the time of the execution of an oil and gas lease to Magnolia Petroleum Company, recorded in Volume 96, page 450, Deed Records of Gregg County, Texas, and at the date of trial, asserts fee simple title and claim to a one-eighth fractional undivided interest in and to the 258 acres, more or less, described in his said guardian's deed and particularly a one-eighth fractional undivided interest (and no more) in and to the north 58 acres covered by and included within the oil, gas and leasehold estate claimed and held by Magnolia Petroleum Company;

"(d) That by said oil, gas and mineral lease, executed by plaintiff Leland Fikes to Magnolia Petroleum Company above described, parties intended that the oil, gas and mineral leasehold estate conveyed thereby apply to and cover the one-eighth fractional undivided interest claimed by the said Leland Fikes in and to the land lying within said north 58 acres of said tract of 258 acres, more or less, and did not include, cover or convey any part of said one-eighth fractional undivided interest claimed and asserted by said Leland Fikes in and to the south 200 acres of said tract of 258 acres;

"(e) That the relief prayed for by plaintiff Leland Fikes and by the defendant Magnolia Petroleum Company should be granted;

"It is therefore ordered, adjudged and decreed that the oil, gas and mineral lease made and executed by the plaintiff Leland Fikes to Magnolia Petroleum Company, July 31, 1931, recorded in Volume 96, page 450, Deed Records of Gregg County, Tex-

as, be and the same is hereby reformed as that thereby it conveys unto Magnolia Petroleum Company the oil, gas, mineral and leasehold estate in the terms and by the covenants of said lease provided in and to the one-eighth fractional undivided interest claimed by the plaintiff Leland Fikes lying within the north 58 acres of land described in the said deed from C. E. Florence, guardian of Jack Howell, to Leland Fikes, dated July 28, 1931, recorded in the Deed Records of Gregg County, Texas;

"It is further ordered, adjudged and decreed upon its cross action that the oil, gas and mineral leasehold estate of the defendant Magnolia Petroleum Company in and to the north 58 acres held and claimed as herein found be and the same is hereby in all things quieted as against the claims of the plaintiff."

Neither Simpson-Fell Oil Company nor Will H. Smith, nor any of these appellants, were parties to said severed cause or parties to the judgment entered in said severed cause.

Following that, in February, 1934, Leland Fikes and F. M. Fonville and his children severed the controversy between them as to Fikes' claim of a one-eighth interest in the 258 acres, and a judgment was entered in this severed cause as between Leland Fikes and F. M. Fonville and his children, in which it was decreed that Leland Fikes take nothing as against F. M. Fonville and his children. These appellants were not parties to this severed cause, nor were they parties to the judgment entered in this severed cause. This severed cause was styled Leland Fikes v. F. M. Fonville et al. and numbered 8306-B, and entered in the same court in which this cause was pending under the number of 8306-A. The action in this last severed cause was in trespass to try title.

Following this and on June 15, 1934, this cause proceeded to trial as between the plaintiffs Simpson-Fell Oil Company and Will H. Smith, and these appellants, as defendants, involving only a claim of an undivided one-eighth interest in and to the leasehold estate in the south 200 acres.

Among the defenses set up in the trial court by these appellants were: (1) That the $1,500 originally paid by Wm. Edward Howell to R. H. Rowland in 1908 was money earned by the said Wm. Edward Howell while living in the state of Illinois, and, consequently, his separate property

under the laws of that state, and (2) the defense as a matter of law that under the doctrine of equitable partition equity would now protect these appellants and make them whole in their leasehold estate in and to the south 200 acres of the said 258-acre tract, in view of the fact that they were the first grantees of a leasehold estate from D. A. Burris, and that after their grants there was sufficient acreage left to fully satisfy the undivided one-eighth interest claim of the said Jack Howell.

The jury found: First, Mary E. Howell, wife of W. E. Howell, furnished a part of the purchase price, from her separate funds, for the purchase of the land in controversy; second, the amount so furnished was $900; third, the money so furnished was not a gift from Mrs. Howell to her husband.

Judgment was rendered in favor of Simpson-Fell Oil Company and Will H. Smith against Stanolind Oil & Gas Company, Simms Oil Company, and Gulf Production Company, and others who did not appeal, as heretofore stated.

### Opinion.

Appellants invoke the equitable rule settled by a long line of decisions in this state that the deed of a tenant in common to a specific parcel of the land held in common by him and others is not void but is good as between the parties thereto. It is voidable only by the cotenants of the grantor and not by them except in so far as it may affect their rights.

Some of the cases so holding are Arnold v. Cauble, 49 Tex. 527; Furrh v. Winston, 66 Tex. 521, 522, 1 S. W. 527; Lasater v. Ramirez (Tex. Com. App.) 212 S. W. 935; Gosch v. Vrona (Tex. Civ. App.) 227 S. W. 219; Heller v. Heller, 114 Tex. 401, 269 S. W. 771; and Brown v. Brown (Tex. Civ. App.) 230 S. W. 1058.

■ The record shows Illinois has no community property law; that the earnings of the spouses during the existence of the marital relation is the separate property of the husband. Under such circumstances, land in Texas conveyed to the husband and paid for by earnings of the parties while married becomes the separate property of the husband. Grange v. Kayser (Tex. Civ. App.) 80 S.W.(2d) 1007, and cases there cited.

■ Under the law of this state the separate estates of the spouses remain separate though they may undergo mutations and

changes; and so long as it may be clearly traced and identified, its distinctive separate character remains unchanged. Rose v. Houston, 11 Tex. 324, 62 Am. Dec. 478; Love v. Robertson, 7 Tex. 6, 56 Am. Dec. 41; Mayor v. Breeding (Tex. Civ. App.) 24 S.W.(2d) 542.

Since $900 of the consideration paid by Howell for the land was the separate estate of his wife, she acquired an undivided nine-fifteenths interest in the land as her separate property.

Since the land was conveyed to E. M. Howell, the legal title was vested in him. He held the title to the land in trust for his wife to the extent of her interest therein. Her title was an equitable one. Speers, Marital Rights (3d Ed.) § 345; Mitchell v. Schofield, 106 Tex. 512, 171 S. W. 1121.

Upon the death of Mrs. Howell her nine-fifteenths interest in the land passed in equal parts to her three surviving children and grandson, Jack Howell, subject to a life estate in one-third thereof in favor of E. M. Howell. Disregarding the life estate, E. M. Howell and the adult children thus owned an undivided seventeen-twentieths interest and Jack Howell an undivided three-twentieths interest in the land. Deducting the 13¼ acres conveyed to Jeter, there remained 244.75 acres in the tract. Jack Howell thus had an undivided interest of 36.72 acres in the land. Howell and the adult children owned the remaining undivided 208.03 acreage. In this situation Howell and his three adult children undertook to convey an undivided seven-eighths interest in the land which was one-fortieth more than they in fact owned. Their deed operated to convey to Fonville only an undivided seventeen-twentieths interest. E. M. Howell, as guardian, under the laws of Illinois, undertook to also convey to Fonville an undivided one-eighth interest. This deed was, of course, ineffective to pass any interest belonging to the minor.

In this manner Fonville and the minor became tenants in common of the 244.75 acres in the Tyndale survey. By the lease of December 29, 1930, Fonville's title to the oil, gas, and other mineral passed to Burris. By the assignments of January 2, 1931, and February 18, 1931, the Simms Oil Company, Stanolind Oil & Gas Company, and Gulf Production Company became the owners of Burris' title to the oil, gas, and other minerals in the south

200 acres. February 4, 1931, Burris executed the assignment to the Magnolia Company. In this way the four oil companies became tenants in common with the minor in the oil, gas, and other minerals in the land.

Appellants' right to invoke the doctrine of an equitable partition is not affected by the later Burris assignment to the Magnolia Company. Moonshine Company v. Dunman, 51 Tex. Civ. App. 159, 111 S. W. 161, 163. In the case cited Justice Reese of the Galveston Court of Civil Appeals said: "If Conaway had made no other conveyances of his part of the land than that to appellants, we suppose it would not be disputed that under this equitable rule appellants would have been entitled, under the fact found by the court that such could be done without detriment to the rights or interests of the Dunmans, to have the entire 2.3 acres, together with the product thereof, partitioned to them as part of Conaway's one-half interest. This right attached to the conveyance to them by Conaway, and we do not think they were deprived of it by the subsequent transfers of undivided interests in the land to the other parties to the partition, all of whom acquired their interests with notice of the contract whereby appellants acquired the 2.3 acres, and consequently with notice of all of the equities attaching to, and inhering in, the contract. These subsequent transferees were put upon inquiry as to the source of Conaway's authority to transfer any title except his own, and were affected with notice that the contract executed by him was not binding upon the Dunmans. They, therefore, had notice of all of the legal and equitable rights growing out of such a conveyance. One of these rights was to have the land so partitioned that this 2.3 acres should be allotted to appellants, if it could be done without detriment to the rights of the Dunmans, as cotenants of Conaway. This was the condition when the other subsequent purchasers acquired their rights with knowledge thereof, and they must be held to have taken subject thereto."

The Magnolia Company purchased with at least constructive notice of the prior assignments to appellants. Appellees, who claim under the minor, also had at least constructive notice of appellants' rights. Furthermore, the title acquired by appellees is equitable and they took it subject to any equitable right which appellants might

have asserted in a suit against them by the minor. National O. & P. L. Co. v. Teel, 95 Tex. 586, 68 S. W. 979; Hennessy v. Blair, 107 Tex. 39, 173 S. W. 871, Ann. Cas. 1918C, 474; Gillette v. Davis (Tex. Civ. App.) 15 S.W.(2d) 1085.

■ Nor, in our opinion, is the right asserted by appellants defeated because the estates involved are oil, gas, and mineral interests. The right to compel partition of such interests by joint owners is conferred by statute. Article 6082, R. S.; Henderson v. Chesley (Tex. Civ. App.) 273 S. W. 299; Id., 116 Tex. 355, 292 S. W. 156; Woods v. Rolls (Tex. Civ. App.) 268 S. W. 988; Id. (Tex. Com. App.) 291 S. W. 532.

■ The relief primarily sought by appellees in the petition upon which they went to trial was for partition of the oil, gas, and other minerals in the land. They are not in a position to now say that such interest in the land is not susceptible of a fair partition. Since such interests may be partitioned, there is, in our opinion, no good reason why the equitable right asserted by appellants should not be applied to such interests if it can be done without prejudice to the rights of the other joint owners.

■ The land is in proven and developed oil territory. It was shown by the undisputed testimony of the witnesses Housch and Moore that the value of the land for oil was all the same. These witnesses were employees of appellants. Appellees assert they were therefore interested and their testimony therefore need not be necessarily accepted as true. Such rule does not apply to a mere employee of an interested party. Western U. T. Co. v. Gardner (Tex. Civ. App.) 278 S. W. 278.

■ The testimony of even interested witnesses is not to be regarded as raising a mere issue of fact if it is direct, positive, and not in anywise contradicted by the circumstances. Thomas & Co. v. Hawthorne (Tex. Civ. App.) 245 S. W. 972. See, also, City of San Antonio v. E. H. Rollins & Sons (Tex. Civ. App.) 127 S. W. 1166.

■ But aside from these considerations respecting the effect to be given to the testimony of Housch and Moore, the burden was upon appellees to show that the mineral value by the acre of the land in the north end of the tract was less than the south 200 acres and appellees would therefore be injured by being required to satisfy their interest out of the north end. See Heller v. Heller, 114 Tex. 401, 269 S. W. 771, 776, where it is said: "It [a deed from one cotenant] creates in the grantee a prima facie equitable title to the whole tract which can be overcome only when it appears that the rights of the other cotenants have been injured by the sale of the particular part of the common property."

We are therefore of the opinion, under the undisputed evidence, that if this were a suit by the minor against these appellants for the undivided three-twentieths interest formerly owned by him, the equitable right invoked by appellants would be applicable and he would be required to satisfy his undivided interest of 36.72 acres out of the 44.75 acres north of the 200 acres held by appellants. As heretofore stated, appellees have no greater right than the minor.

Another consideration in support of appellants' claim arises out of the lease of July 31, 1931, by Fikes to the Magnolia Company.

In Harrison Oil Co. v. Sherman (Tex. Civ. App.) 66 S.W.(2d) 701, 704 (error denied), Chief Justice Walker, after stating the rule in question, said:

"Under this proposition appellees had the right to recognize the conveyances made by their cotenants and to claim their interest in the land against such conveyances in the inverse order of their execution; that is, to recognize the first conveyances made by their cotenants and to claim only against the last conveyances. This proposition would have invested appellees with title to the 130 acres in controversy, and it was on this theory of the facts, as we understand the record, that they base their claim and were awarded this specific tract of land by the judgment of the lower court.

"Under the general principles of law governing cotenancy, appellees were not forced absolutely to recognize the conveyances of the common property executed by their cotenants, but had the right to contest such conveyances to the extent necessary to protect fully their rights. Mast v. Tibbles, 60 Tex. 301; Good v. Coombs, 28 Tex. 34; Dorn v. Dunham, 24 Tex. 366; Duncan v. Sylvester, 24 Me. 482, 41 Am. Dec. 400. However, they were compelled to make an election, either to treat these conveyances as good or else to avoid them. Barnes v. Lynch, 151 Mass. 510, 24 N. E. 783, 21 Am. St. Rep. 470. By executing their quitclaim deeds to Mrs. Nonie O'Brien, appellees made their election to repudiate the ex parte

partition made by their cotenants and to claim for themselves, notwithstanding such ex parte partition, specific tracts or portions of the common property. Having thus selected specific portions of the common property as their own, thereby attempting to make an ex parte partition, their conveyances to Mrs. Nonie O'Brien of these specific portions of property were good as against the world. Lasater v. Ramirez (Tex. Com. App.) 212 S. W. 935, except in so far as appellees' cotenants had the right to attack them as being inequitable and prejudicial to their interests, which they have not attempted to do in this suit. Certainly appellees cannot now be heard to question their deliberate and voluntary act in attempting to make, upon a valuable consideration, an equitable ex parte partition by executing their quitclaim deeds to specific tracts of land to Mrs. Nonie O'Brien, nor can they be heard to deny that their deeds to Mrs. Nonie O'Brien conveyed to her the undivided interest in the 500 acres inherited by Mrs. Sherman from her mother.

"That at the time she accepted her quitclaim deeds from appellees Mrs. Nonie O'Brien held the land covered by these quitclaim deeds under appellees' cotenants is immaterial to any issue in this case. Appellees owned the interest of Mrs. Sherman, which they held as a joint tenancy and had the right to sell. Not being satisfied with her title under appellees' cotenants, it was the right of Mrs. O'Brien, which she exercised, to ask appellees to claim specific portions of the land as their aliquot part of the common property and to convey the same to her."

In Cook v. I. & G. N. R. R. Co., 3 Tex. Civ. App. 125, 22 S. W. 1012, 1013, Chief Justice Garrett said: "While it has been held that the deed of a tenant in common for a portion of the land by metes and bounds is void, the recognized doctrine in this state is that such a deed will convey an equity which the grantee has a right to assert in a suit for partition, and to have the land conveyed and set apart to him in the partition, if it can be done without prejudice to the other tenants in common. Plaintiffs in this case, after the sale by their cotenants to the defendant, proceeded to partition the remainder of the land among themselves. The partition was exclusive of the land conveyed to the defendant, and they did not make it a party to such partition, but in fact cut themselves off from the power to have any other partition with the defendant, such as would recognize its right to have the land

in controversy set apart to it. Such proceedings were equivalent to a recognition of the right of the defendant to have the land set apart to it, because all of the rest of the land was appropriated by plaintiffs, and the defendant could not have a proportional part of the land set apart to it elsewhere in the tract if it should appear inequitable for it to retain the identical tract conveyed to it by plaintiffs' cotenants."

By his lease of July 31, 1931, Fikes leased to the Magnolia Company that specific portion of the land lying north of the 200 acres claimed by appellees. This lease evidenced an intention on the part of Fikes to appropriate for his part the land in the north end of the tract which had more than sufficient acreage to satisfy his interest and was in effect a recognition and ratification of the previous allotment by his cotenants of the south 200 acres to appellants. The two cases last mentioned support this view. Appellees are not aided in this matter by the judgment in the severed cause whereby the lease by Fikes to the Magnolia Company was reformed. Appellants were not parties to the severed cause and are not bound by the judgment therein. Such judgment and its recitals have no probative force against appellants. It would have been competent in this case, in avoidance of the effect of said lease, for appellants to have shown a mutual mistake in the execution of said lease, but no such evidence was offered.

■ Appellees assert the equitable rule invoked by appellants cannot apply because it was necessary that the entire 258-acre tract be included in the suit and all parties interested therein be joined. In that connection appellees rely upon the well-known rule that in a statutory suit to compel partition all of the joint owners must be joined in the suit either as plaintiffs or defendants. 32 Tex. Jur., Title Partition, § 34.

This rule, in our opinion, has no present application. This is not a suit for compulsory partition. By their amended petition upon which plaintiffs went to trial, the suit resolved itself into trespass to try title to recover a one-eighth interest in the south 200 acres. This is shown by the alternative nature of the allegations of the petition as stated above and the fact that defendants denied the plaintiffs owned any interest in the land. Many of the cases in which the rule invoked by appellants was applied were actions of trespass to try title. The operation of the rule is not to compel a partition, but to uphold a partial partition theretofore

effected, whereby the grant by one of the tenants in common of a specific parcel of the land owned in common is sustained and title in severalty to such specific parcel vested in such grantee. When the rule is applicable, it operates with respect to a partition already effected.

The authorities heretofore cited all hold that the deed is not void; that it is good between the parties; voidable only by the non-consenting cotenant and by him only in so far as it affects his rights.

No reason suggests itself to us why the entire 244.75 acres should of necessity be involved in the suit before the rule could properly be applied.

Under the findings of the jury, the minor inherited a three-twentieths interest. The deed of Florence, the Texas guardian, conveyed a one-eighth interest. There is thus a one-fortieth interest in the 244.75-acre tract outstanding in the minor. His title and rights are not affected or prejudiced by the application here of the doctrine invoked by appellants. He is at liberty to assert his right to an undivided one-fortieth interest in all of the 244.75-acre tract. We are of the opinion that his joinder in the suit was not necessary in order to apply the rule. Noble v. Meyers, 76 Tex. 280, 13 S. W. 229. Therefore he is not an indispensable party in the strict sense as he would be regarded in a suit to compel partition.

It is unnecessary to consider other questions raised for upon the views expressed the judgment should be reversed and here rendered in favor of appellants. It is so ordered.