*695 OPINION.
Black:
We shall first consider assignment of error (b). In approaching this issue a brief review of what the parties have done and are now contending may be helpful. A partnership return for Jas. F. Welder Heirs was filed for 1936 showing a net income of $399,-183.50, on which return each petitioner was listed as being entitled to a one-fourth distributive share in its net income. Petitioners in their individual returns reported their so-called distributive share as if the net income of $399,183.50 was composed of the difference between separate net income of $409,089 and a convrmmity loss of $9,-905.50. This classification as between separate and community is identically the same as determined by the respondent except that the respondent added $72,875 as restored depletion to the separate income, which is the subject of assignment of error (a) (1), and treated the $5,000 commission paid as a deduction from separate income rather than as a deduction from community income, which treatment of the $5,000 petitioners do not question. Accordingly, each petitioner in reporting his or her so-called distributive share of Jas. F. Welder Heirs reported on the basis of a separate net income of $102,272.25 and a community loss of $2,476.38. The respondent, as indicated in our findings, determined that each petitioner should have reported on the basis of a separate net income of $119,241 and a community loss of $1,226.38. Petitioners now contend that the respondent erred in restoring the $72,875 item to income (which contention we shall consider when we take up assignment of error (a) (1)); that petitioners and respondent all erred in treating any of the income of Jas. F. Welder Heirs as separate income; that all of the income of Jas. F. Welder Heirs was partnership income and therefore community income; that each petitioner should have reported as his or her taxable income only one-half of one-fourth of $399,183.50, or $49,897.94; and that each petitioner is, therefore, due a refund instead of a deficiency. The respondent contends that his determinations are correct.
Is any of the income from Jas. F. Welder Heirs separate income to these petitioners, or is it all community income? We must look to the laws of the State of Texas for the answer. Poe v. Seaborn, 282 U. S. 101; Hopkins v. Bacon, 282 U. S. 122. It is petitioners’ position that under the Federal taxing act Jas. F. Welder Heirs has been properly classified as a partnership and that also under Texas laws Jas. F. Welder Heirs was a partnership, but if, because the wives had not had their coverture disabilities removed, Jas. F. Welder Heirs, can not be considered a partnership under Texas law, *696 nevertheless all of the income in question must be classed the same as partnership profits and, as such, community income, citing as authority for the latter proposition 32 Texas Jurisprudence 228, par. 6. As shown in the above quoted statement from the deficiency notices the respondent’s position is that the question at issue is controlled by Commissioner v. Wilson, 76 Fed. (2d) 766.
At the outset we think it should be made clear that from the Federal tax standpoint Jas. F. Welder Heirs must be.classified as either a partnership, trust, or corporation, as those terms are defined in section 1001 (a) (1), (2) and (8) of the Revenue Act of 1936.[2] This classification is controlled by Federal and not state law. Burk-Waggoner Oil Association v. Hopkins, 269 U. S. 110; Pierce Oil Corporation, 32 B. T. A. 403, pp. 429, 430. If classed as a partnership, it would not be taxed as a separate entity, but there would be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership. See secs. 181, 182, 183, and 187, Revenue Act of 1936. If classed as a trust, it would be taxed as a separate entity unless all of its income by the terms of the trust instrument was to be distributed currently by the fiduciary to the beneficiaries, or unless it was a revocable trust or one relating to income for the benefit of the grantors. See secs. 161, 162, 166, and 167, Revenue Act of 1936. If classed as a corporation, all of its net income would be taxed to it as a separate entity, and only the amounts actually distributed to the petitioners, namely, 95,000 to each petitioner, would, after being classed as either community or separate property, be taxed to petitioners as dividends. See secs. 13 and 115, Revenue Act of 1936. From this Federal tax standpoint the record clearly shows that Jas. F. Welder Heirs filed a return for 1936 and prior years as a partnership, and that this classification was accepted by the respondent in arriving at his determinations of the deficiencies, notwithstanding statements made by counsel for the respondent, both at the hearing and in his brief, to the effect that the respondent has not determined that Jas. F. Welder Heirs was a partnership. Moreover, we think respondent was correct in determining that Jas. F. Welder Heirs was a partnership as defined by section 1001 (a) (3) of the Revenue Act of 1936. He has so treated it in his determination of the deficiencies. Petitioners *697 agree to that much of the treatment, and no sufficient reason why we should hold otherwise in these procedings has been pointed out.
If we should hold, as respondent’s counsel now contends in his brief, that Jas. F. Welder Heirs should not be treated as a partnership for Federal taxation, then that would mean that it must be classed either as an association taxable as a corporation or as a strict trust under the applicable revenue act. That would in turn mean that each petitioner would be taxable on only $95,000 which was distributed to him in the taxable year and respondent’s whole case would fall. Petitioners, however, make no such contention and freely concede that Jas. F. Welder Heirs should be taxed as a partnership under section 1001, and that each petitioner is taxable on his part of the gains and profits, whether actually distributed or not, but upon the community property basis. As we have already said, the fact that Jas. F. Welder Heirs is properly classed as a partnership for taxation under Federal law does not mean that Jas. F. Welder Heirs was a partnership under the laws of Texas. For reasons which we shall later point out, we think it is clear that Jas. F. Welder Heirs was not a partnership under Texas laws and the. property rights of the respective petitioners in the income received from Jas. F. Welder Heirs are not governed by Texas laws relating to partnerships but by its general property laws.
The Bevised Statutes of Texas in effect during the taxable year define the separate property of the husband and wife and their community property in the following language:
Article 4613: Ail property of the husband, both real and personal, owned or claimed by him before marriage, and that acquired afterwards by gift, devise, or descent, as also the increase of all lands thus acquired, shall be his separate property. * * *
Article 4614: All property of the wife, both real and personal, owned or claimed by her before marriage, and that acquired afterward by gift, devise, or descent, as also the increase of all lands thus acquired, shall be the separate property of the wife. * * *
Article 4619: All property acquired by either the husband or wife during marriage, except that which is the separate property of either, shall be deemed the common property of the husband and wife * * *.
Petitioners and the respondent agree that under the Texas law oil and gas bonuses and royalties as distinguished from rents and revenues received from leases on the separate land of either husband or wife, constitute increase of lands and as such the separate income of the owner of the land rather than community income. Cf. Stephens v. Stephens, 292 S. W. 290; E. Michna, 24 B. T. A. 715, 719; Chesson v. Commissioner, 57 Fed. (2d) 141; Turbeville v. Commissioner, 84 Fed. (2d) 307; certiorari denied, 299 U. S. 581. But petitioners argue that this doctrine has no application here for the reasons that they conveyed away their separate lands to a partnership; that from then *698 on. they owned no specific interest in the lands, but had with respect to them, as well as all other partnership property, only , a chose in action; and that when the lands were so conveyed away and invested in the partnership, under 32 Texas Jurisprudence 223, “Such separate property becomes community property and the profits become community property.” We think this would probably be true, although respondent argues strongly to the contrary, if Jas. F. Welder Heirs is properly classed as a partnership under Texas laws.
The only agreement that petitioners had regarding their relationship was the trust instrument executed on February 15, 1932. Nowhere in this lengthy instrument was it ever suggested that the parties intended to enter into any partnership relation. It is stated in 32 Texas Jurisprudence 221, par. 5, that “A partnership at com. mon law is only a contractual status which exists in respect of the several persons who compose the firm-and who create it by their contract”, and in 32 Texas Jurisprudence 234, par. 13, that “As between the parties themselves there must be a voluntary agreement and an actual intention to become partners. Their actual intention determines as among themselves the question as to whether a partnership or some other relation has been formed by their agreement. What they call their agreement and make it determines their relation unless their actual intent is nevertheless to be partners.”
Furthermore, three of the grantors were married women who had never made application for removing their disabilities of coverture,[3] and could not, therefore, under the Texas law, enter into a partnership with their husbands or with anyone else. Wright v. State, 71 S. W. (2d) 352. Neither did the instrument of February 15, 1932, indicate in any manner that James F. Welder, Jr., and the respective husbands of his three sisters were to enter into a partnership among themselves, with the three sisters as creditors. The instrument plainly indicates an intention that for a period of 10 years the properties conveyed to the trustees “be managed, handled, controlled and conducted as a ranch and farm business as an entirety, without partition of any kind” and upon the termination of “this trust * * * said trustees shall reconvey to said respective beneficiaries, or to the person or persons entitled thereto, their respective shares in said properties.” The main idea which the parties had in mind was to hold the lands together as their mother had requested them to do when she deeded them the Duval ranch in October 1931. Provision was made for successor trustees in case either Kate B. Welder or James F. Welder, Jr., or both, became incapacitated, and the trust was not to terminate by reason of the death of any of the parties thereto, but was to continue to the end of the ten-year term. One does not find such provisions in a partnership agreement, it being fundamental in partnership law *699 that the death of a partner dissolves the partnership. We think J as. F. Welder Heirs was, under the Texas law, a joint venture, group, or pool rather than a partnership.
We think that under these circumstances the question as to whether the oil and gas bonuses and royalties in question (including whatever restored depletion we hold to be income in our discussion of that issue below) constitute community or separate income is controlled by Commissioner v. Wilson, supra. Petitioners attempt to distinguish that case from the instant case on the ground that the beneficiaries of the trust involved in the Wilson case did not create the trust, as was the case here, and that there was no contention made in the Wilson case that the trust there was a partnership. We have already held that in the instant case the petitioners were not partners under Texas law but members of a group or joint venture or pool. In either such event petitioners were the equitable owners of the properties held by the trustees. Cf. Commissioner v. Terry, 69 Fed. (2d) 969; Eva Lavino Griffiths, 30 B. T. A. 852. The moneys paid as lease bonuses and royalties represented the conversion into cash of a portion of the corpus of their separate estate. The separate estate may undergo mutations, but it still retains its separate character so long as it can be traced and identified. Cf. Stanolind Oil & Gas Co. v. Simpson-Fell Oil Co., 85 S. W. (2d) 325; affirmed by the Supreme Court of Texas, 125 S. W. (2d) 263. It was so traced and identified in the instant proceedings. It, therefore, remained the separate estate of these petitioners, and is taxable to them as their separate income. The respondent’s determination as to this issue is sustained. Commissioner v. Wilson, supra.
We shall now consider assignment of error (a) (1). Ás far as this issue concerns the restored depletion of $68,750 in connection with the lease to the Humble Oil & Refining Co. for a cash bonus of $250,000, it is controlled by our decisions in Grace M. Barnett, 39 B. T. A. 864, and J. T. Sneed, Jr., 40 B. T. A. 1136, and upon the basis of those decisions we hold for the respondent. There was no production whatever from the Humble lease prior to its surrender in 1936.
As far as this issue concerns the restored depletion of $4,125 in connection with the oil and gas lease to the Circle W. Oil Corporation for a cash bonus of $15,000, the undisputed evidence shows that Circle W. Oil Corporation drilled a well upon the tract in 1934 and that well produced oil sufficient that Jas. F. Welder Heirs received therefrom royalties amounting to $13.81 and payments out of oil to apply on the reserved oil payment amounting to $23.17. It was also definitely established by the evidence that the well so drilled was capable of producing substantial quantities of gas which could not then be utilized profitably in that field but at the present time could be utilized with a substantial profit.
*700 Under these circumstances we do not think that article 23 (m)-10 (c) of Regulations 94, upon which respondent relies, authorizes a restoration to income in 1936 of the $4,125 depletion deducted in 1934 because of the Circle W. Oil Corporation bonus. Percentage depletion is not based on cost and has no relationship to cost. There has been actual depletion, though small in amount, from this 150-acre tract, and this depletion took place under the Circle W. Oil Corporation lease. Under the respondent’s own ruling as contained in G. C. M. 14484, C. B. XIV-1, p. 98, the depletion allowed in 1934 with respect to this particular lease should not be restored to income, because there has been actual production from the lease. As to this part of the Commissioner’s determination, petitioners’ assignment of error is sustained.
Reviewed by the Board.

Decisions will be entered wnder Bule 50.

 SEC. 1001. DEFINITIONS.
(a) When used in this Act—
(1) The term “person” means an individual, a trust or estate, a partnership, or a corporation.
(2) The term “corporation” includes associations, joint-stock companies, and insurance companies.
(3) The term “partnership” includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this Act, a trust or estate or a corporation; and the term “partner” includes a member in such a syndicate, group, pool, joint venture, or organization.

 See footnote 1, p. 2.