DOLORES CRABB, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 95002, 95003, 95004, 95005. Promulgated October 20, 1942.

*Wright Morrow, Esq.*, and *Harry C. Weeks, Esq.*, for the petitioners.
*Donald P. Moyers, Esq.*, for the respondent.

---

[1] Proceedings of the following petitioners are consolidated herewith: Madeline Welder Smith; Elizabeth Wood; and Estate of James F. Welder, Jr., Deceased, C. K. McCan, W. B. Callan and Roger Fleming, Independent Executors.

920

OPINION.

BLACK: The errors assigned in each petition are set out in full in our previous report, *supra*, at page 687. Assignment of error (a) is 'no longer before the Board for consideration. Under assignment of error (b) the question is whether certain net income for the calendar year 1936 in the amount of $472,839 is community or separate income.

For the year 1936 Jas. F. Welder Heirs filed a partnership return of income on Form 1065 and reported therein a net income of

$399,183.50. In their individual returns for the same year each petitioner (for convenience only we shall still refer to James F. Welder, Jr., as the petitioner in Docket No. 95005) treated this net income reported by Jas. F. Welder Heirs as representing separate income in the amount of $409,089 and a community loss of $9,905.50, computed as follows:

| | Separate | Community |
|---|---|---|
| Gross income: | | |
| Loss from cattle raising and farming | | ($13,799.17) |
| Interest received | | 1,701.39 |
| Rents received | | 19,477.86 |
| Oil and gas royalties and bonus | $241,878.15 | |
| Bonus for oil and gas leases | 337,929.59 | |
| Total | 579,807.74 | 7,380.08 |
| Deductions: | | |
| Rent on business property | | 2,164.82 |
| Taxes paid | 11,271.62 | |
| Loss on cattle that died | | 9,047.50 |
| Depreciation | | 1,073.26 |
| Depletion (27½% of $579,807.74) | 159,447.12 | |
| Commission for oil lease | | 5,000.00 |
| Total | 170,718.74 | 17,285.58 |
| Net income and (loss) | 409,089.00 | (9,905 50) |
| One-fourth of net income and (loss) | 102,272.25 | (2,476.38) |

The only adjustments which the respondent made to the net income as thus reported by Jas. F. Welder Heirs and petitioners was to treat the commission for oil lease of $5,000 as a separate deduction rather than as a community deduction, and to add to the separate net income $4,125 and $68,750 as representing restored depletion in connection with the lease to the Circle W. Oil Corporation and the Humble Oil & Refining Co., respectively, which leases were made in 1934 but were surrendered in 1936. These adjustments increased the separate net income to $476,964 and reduced the community loss to $4,905.50, the details of which are set out in table form in our previous report, *supra*, at page 694.

At the time the proceedings were originally considered by the Board it was petitioners' contention that the respondent erred in adding to the net income reported by Jas. F. Welder Heirs and petitioners the two items of restored depletion, and that the petitioners and the respondent all erred in treating any of the income in question as the separate income of petitioners in that all such income, under Texas law, was community income.

In our previous report we held that the respondent erred in adding to the net income reported by Jas. F. Welder Heirs and petitioners the restored depletion of $4,125 in connection with the lease to the Circle W. Oil Corporation, but that in all other respects the respondent's determination was correct. The effect of this holding was that the separate net income was thus reduced to the amount of $472,839

($476,964 minus $4,125), which is the amount mentioned in our previous statements of the question here involved.

Petitioners now concede that, under the decided cases, the restored depletion of $68,750 in connection with the lease to the Humble Oil & Refining Co. represents income, but contend that the entire amount of $472,839 represents community income and not separate income; that they were wrong in originally reporting the net income received by Jas. F. Welder Heirs from oil and gas bonuses and royalties as separate income; that instead of a deficiency each petitioner has made an overpayment of his income tax and is entitled to a refund; and that in any event the restored depletion of $68,750 (included in the amount of $472,839) should be held to be community rather than separate property.

The basis for petitioners' contention that the net income of $472,839 is community and not separate income is that Jas. F. Welder Heirs is a partnership under Texas law as well as under section 1001 (a) (3) of the Revenue Act of 1936 (see footnote 2 of our previous report) and that under Texas law all income from a Texas partnership is community. We held, however, that Jas. F. Welder Heirs was, under Texas law, a joint venture, group, or pool rather than a partnership, and that under *Commissioner* v. *Wilson*, 76 Fed. (2d) 766, the entire net income of $472,839 now in question was separate property.

The Fifth Circuit in its decision of May 5, 1941, *supra*, affirmed the Board, and, among other things in its opinion, said:

We do not think it necessary to decide what the trust business is, because the lease and sale of mineral deposits was not included in it. Farming and ranching business was contemplated and the trust was created for that alone. All save the last of the many pages of the instrument relate to that only. The land was conveyed for but ten years, and "for the purpose of carrying on certain farming and ranch businesses." The conveying of a base fee in minerals by lease, or selling them outright was not included. The power of the trustees to convey minerals is a separate and superadded matter, for which the trustees are created expressly the attorneys in fact of the landowners to execute the leases or deeds. They do not convey their title as trustees, but the title of the reversioners, acting as their attorneys or agents. The proceeds come not from the operations of the trust, but from the disposal of minerals which were never conveyed to the trustees. The lease bonuses are separate property.

Petitioners filed a motion for rehearing before the court, and in passing upon that motion the court in its decision of July 25, 1941, *supra*, among other things, said:

We have but found a different reason in law for the Board's conclusion that these bonuses are not community but individual income. It is true, however, that this reason or "theory" does not appear to have been urged before or considered by the Board. The petitioners contend that the evidence was not fully developed bearing upon it. It is not plain to us what new evidence could be relevant, or how any different result could follow, but we will remand the

case to the Board, as petitioners request, that full opportunity may be given to present their case.

Petitioners have been given that full opportunity and additional findings of fact as shown above have been made from the evidence which was introduced at the rehearing. Based upon such additional findings, as well as the facts embodied in our former report, petitioners argue three points and an alternative to the first point. We shall consider these points in the order argued.

*Point 1.*—(a) Under this point petitioners argue that there is no factual support for that part of the court's opinion wherein it is stated:

\* \* \* They do not convey their title as trustees, but the title of the reversioners, acting as their attorneys or agents. The proceeds come not from the operations of the trust, but from the disposal of minerals which were never conveyed to the trustees. \* \* \*

Petitioners contend that, considering the correctness of the above statement from a factual standpoint, the evidence submitted at the rehearing conclusively demonstrates that it is erroneous.

Petitioners contend that on the basis of the additional findings of fact the trustees of Jas. F. Welder Heirs owned all of the minerals in the lands under discussion; that Jas. F. Welder Heirs, acting by its duly authorized trustee, made the oil and gas leases, received the bonuses, and sold the royalty oil and collected therefor; that all of these receipts were in fact and law the income of Jas. F. Welder Heirs as a separate entity; and that whatever petitioners received on this account came from the operations of Jas. F. Welder Heirs and not from the disposal of minerals which were never conveyed to the trustees.

We do not think that the manner in which the leases were made or the account in which the moneys were deposited and paid out as described in our additional findings of fact would in any way change the result reached by the Fifth Circuit. The case must turn on the correct construction of the trust instrument executed on February 15, 1932, and the supplemental instrument executed on June 7, 1932. The court had these instruments before it in their entirety on review, and in construing them the court concluded that they "did not extend to the making of leases and thus raising bonuses, but that this activity must be supported as the exercise of a power of attorney added to the trust provisions." (From the court's opinion of July 25, 1941.)

On the basis of such a construction of the instruments, we do not think that the form the trustees adopted to carry out their authority or how they treated the transactions upon their books or in what name they deposited the money would in any way change the equitable ownership of the properties held by the trustees from that

of separate to community ownership or the income therefrom in the form of bonuses and royalties from separate to community income. Following the court's decision in *Crabb* v. *Commissioner, supra,* we think the beneficial ownership of the lands in question remained in petitioners as their separate properties and that upon its authority and the authority of *Commissioner* v. *Wilson, supra,* the net income received from oil and gas royalties and bonuses derived from such lands remains the separate properties of petitioners. We so hold.

(b) Petitioners contend in the alternative that, if the bonuses and royalties are not the income of Jas. F. Welder Heirs as a separate entity, then they must be excluded from the computation of petitioners' taxable income for the reason that there are no determinations or pleadings on behalf of the respondent to warrant the Board in making any adjustment to petitioners' incomes except by adjusting the amount of the income of Jas. F. Welder Heirs as a separate entity. We think this contention is without merit. As to the income from oil and gas royalties and bonuses according to the court's holding in *Crabb* v. *Commissioner, supra,* the trustees were petitioners' attorneys in fact, and receipt by an agent is receipt by the principal. *Baker* v. *Commissioner,* 81 Fed. (2d) 741, affirming 30 B. T. A. 188.

*Point 2.*—Under this point petitioners reargue their contention that Jas. F. Welder Heirs was a partnership under Texas law. The court in its opinion of May 5, 1941, for reasons therein stated and from which we have already quoted, thought it unnecessary to decide that question. Under this point petitioners are in effect asking the Board to hold contrary to the Fifth Circuit in its construction of the trust instruments and then to overrule our previous holding that Jas. F. Welder Heirs is not a partnership under Texas law. It naturally follows from the construction that the court has given the trust indenture, that whether Jas. F. Welder Heirs is or is not a partnership under Texas law becomes immaterial. We, therefore, make no attempt to add anything to what we said in our former report regarding that question.

*Point 3.*—Under this point petitioners contend that at least the restored depletion in the amount of $68,750 is community property. The respondent, without briefing the point, merely contends that this amount is also separate property and is in the same category as the above amount of $404,089. At the time the case was originally considered, petitioners' principal contention with respect to this item was that the restored depletion was not income in any event, either community or separate. It is now settled that restored depletion of the kind here involved is "income" and petitioners concede that that question is no longer before the Board for consid-

eration. *Crabb* v. *Commissioner, supra;* see also *Sneed* v. *Commissioner*, 119 Fed. (2d) 767, motion for rehearing denied, 121 Fed. (2d) 725; certiorari denied, 314 U. S. 686. But the question of whether the restored depletion is community income or separate income has never been separately determined by the Board. In view of the court's statement in its opinion of July 25, 1941, that "we will remand the case to the Board, as petitioners request, that full opportunity may be given to present their case", we shall now consider the question of whether the restored depletion is community or separate income.

Petitioners state their argument on this point in their brief, as follows:

This is another phase of the community property question which the Fifth Circuit Court did not consider; neither did the Board in its original opinion discuss it. The situation is somewhat unusual, because of the difference between the way bonuses are treated under Texas law and under the Income Tax Law. Under Texas law the cash bonus for an oil and gas lease is considered the proceeds from the sale of an interest in the property, and as such its classification as between separate and community property, depending upon the separate or community status of the land from which it is derived. On the other hand, federal tax law and decisions treat such bonuses as ordinary income—not as proceeds from sales. We admit that had the leases continued in force, this difference would not have prevented the bonuses, aside from the partnership question heretofore discussed, from becoming the separate property of those who owned the land as their separate property.

But we are here dealing with cases in which the leases terminated without the extraction of any oil or gas whatsoever from the tracts leased, when the conditional sale terminated without any loss of the original title or impairment in ownership. There is no Texas case which holds that if a married person obtains a cash bonus from a lease on his separate lands, and thereafter the lease is terminated without any production whatever, so he is reinvested with good title to all of the property, such a bonus is nevertheless separate property. * * *

So far as we know, it is true that there is no Texas case which has decided the precise question which petitioners now raise. We are cited to none and we know of none. But certainly the United States Circuit Court of Appeals for the Fifth Circuit has decided in *Commissioner* v. *Wilson, supra,* following Texas cases cited therein, that bonus payments received as part of the consideration for an oil and gas lease of a taxpayer's separate property are the separate property of the recipient. The percentage depletion deduction of 27½ percent likewise in such cases represents a separate deduction to the taxpayer. On the other hand, if the bonus payments are received for oil and gas leases on community property, they would be community income. See *J. T. Sneed, Jr.,* 30 B. T. A. 1121. And the percentage depletion deductions allowed against such community income would be treated as community deductions. See method used in *J. T. Sneed, Jr.,* 33 B. T. A. 478.

Petitioners' argument does not appear to question the correctness of the foregoing propositions, but contends that, when in some future year it is determined that there will be no oil and gas production on the leased separate estate, the restored depletion becomes community income because it no longer represents a return of capital. It seems to us that, when once the character of a bonus payment under Texas law has been determined, depending upon whether the leased property is community property or separate property, its character will not be changed merely because no actual oil and gas production ever takes place. The restoration to income in a subsequent year of the percentage depletion deduction formerly taken is simply a restoration to income of that part of the bonus payment which was taken as a deduction. This view, we think, is in harmony with the reasoning of the court in *Sneed* v. *Commissioner*, *supra*. The court, in that case, among other things, said:

The deduction for depletion from a bonus received never represents an actual but always an anticipated depletion. If the anticipated depletion does not occur and it becomes certain it never will, it then becomes plain that what was thus deducted is not a return of capital, but *gain like the remainder of the bonus paid*. An adjustment is due. Should it be made by reopening the tax settlement for the year the bonus was received and the deduction taken? That would be most logical and accurate. But the limitations statutes, which would prevent it in this case, do not provide for it, and administrative convenience is against it. The Commissioner from the very beginning, under the broad regulatory power attached to every authorization of the deduction for depletion, solved the problem by requiring an addition to income in the year when the status as income of the amount deducted becomes clear. * * * [Italics supplied.]

We, therefore, hold that the $68,750 depletion restored to income in 1936, which represented a deduction taken against bonus payments of $250,000 received by Jas. F. Welder Heirs in 1934 from the Humble Oil & Refining Co., was the separate income of petitioners in 1936 as determined by the respondent.

Reviewed by the Board.

*Decision will be entered under Rule 50.*