Rosalie H. Bosworth v. Commissioner. Palmer Hutcheson v. Commissioner. Joseph C. Hutcheson, Jr. v. Commissioner.
Bosworth v. Commissioner
Docket Nos. 112594, 112595, 450.
United States Tax Court
1943 Tax Ct. Memo LEXIS 119; 2 T.C.M. (CCH) 773; T.C.M. (RIA) 43418; September 15, 1943
*119 Palmer Hutcheson, Esq., 16th Floor, Niels Esperson Bldg., Houston, Tex., pro se and for Rosalie H. Bosworth and Joseph C. Hutcheson, Jr. Stanley B. Anderson, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Each of these cases involves a deficiency in income taxes for the year 1940, as follows: Name
Docket No.
Amount
Rosalie H. Bosworth
112594
$460.97
Palmer Hutcheson
112595
705.77
Joseph C. Hutcheson, Jr.
450
533.67
All three petitioners reside at Houston, Harris County, Texas. Each filed separate income tax returns for the period involved with the collector of internal revenue for the first district of Texas. Docket Nos. 112594 and 112595 involve issues as follows: (1) whether gain realized from the sale of real estate lots is taxable as ordinary income rather than as capital gain; (2) whether, if ordinary income, it is community or separate income; (3) whether percentage depletion deducted in a prior year in connection with a mineral lease is properly includable in income in the taxable year the lease expired without production; and (4) whether if depletion is restored to income it is separate or community income. *120 Docket No. 450 involves the first abovementioned issue only and it is stipulated the decision there shall follow the disposition of this issue in the other cases. Findings of Fact Each petitioner is married and each filed income tax returns, for the year involved, separate from their respective spouses. Petitioner, Rosalie H. Bosworth, is a housewife; petitioner, Palmer Hutcheson, is a lawyer actively engaged in the practice; and petitioner, Joseph C. Hutcheson, Jr., is a judge. All three are children of J. C. Hutcheson, deceased. In 1921 J. C. Hutcheson deeded to his seven children, including the petitioners, a tract of land in and near Houston. Texas, consisting of about 1,000 acres. Since that time many efforts to sell the lands were made without success. In 1937 Dr. Allen C. Hutcheson, one of the children, held a power of attorney from the other children to dispose of the property. In 1937 and again in July 1939, a contract was entered into with Albert Perkins. The contract contained the following provisions: "THE STATE OF TEXAS: "COUNTY OF HARRIS: "This agreement made and entered into this day of 1939 A.D by and between J. C. Hutcheson, Jr., of Harris County, Texas, Stella *121 Hutcheson Dabney of Dallas County, Texas, Mildred Hutcheson Clymer of the County of New York. Elise Hutcheson Chapin and her husband E. Y. Chapin, of the County of Hamilton, Tennessee, Palmer Hutcheson of Harris County, Texas, Rosalie Hutcheson Bosworth and her husband, L. S. Bosworth of Harris County. Texas, the said Joseph C. Hutcheson, Jr., Stella Hutcheson Dabney, Mildred Hutcheson Clymer, Elise Hutcheson Chapin. E. Y. Chapin, Palmer Hutcheson. Rosalie Hutcheson Bosworth, and L. S. Bosworth acting by and through their duly appointed Agent and Attorney in Fact, Allen C Hutcheson, and Allen C. Hutcheson; hereinafter called party of the first part, and Albert Perkins, hereinafter called party of the second part: WITNESSETH "The Party of the first part gives to the party of the second part the sole right for a period of twelve (12) months from the date hereof, to sell a certain tract of land in tracts or parcels of approximately 15,000 square feet each. Said tract being located in Harris County, Texas, in Harris and Wilson Two-League Grant, and more particularly described as follows, to-wit: Kashmere Gardens Park Section and Kashmere Gardens Annex, as shown by plat and described *122 in Volume 15, Page 18, of Map Records of Harris County Map Records." Party of the first part agrees to survey the proposed development. Party of the second part agrees to advance all of the expenses for the development of this Kashmere Gardens Park Section and Kashmere Gardens Annex, with the exception of the survey referred to in the next preceding paragraph. This sum advanced for development will be paid back to party of the second part by party of the first part from proceeds of sales of these additions. It is understood and agreed by both parties that when the survey of the proposed development is completed that the party of the second part shall prepare a price list of each and every parcel in said development. Said price list must be approved by party of the first part. And it shall have a period of ten days to make said approval. It is understood and agreed by both parties that the party of the second part as his compensation for services rendered shall receive a commission of thirty-five (35%) per cent of the selling price of each and every tract sold by him; except that in the event of a cash sale where the purchaser is allowed a discount of ten (10%) per cent of the *123 purchase price, party of the second part shall receive a commission of thirty (30%) per cent of the selling price paid by the purchaser. It is further agreed and understood by both parties that the party of the second part shall retain the initial ten per cent (10%) cash payment and shall receive one-half (1/2) of all monthly payments on all lots sold by him until his commission has been paid in full. It is also agreed that just as soon as the initial 10% of the purchase price has been paid by the purchaser, the party of the second part shall deliver to purchaser a contract for deed to said tract, the balance due payable at the rate of $5.00 or more per month. However, if two or more parcels are sold to the same party, the monthly payments may be reduced to as low as $3.75 per month. Said payments shall include interest at the rate of 6% per annum. Party of the second part agrees to collect all payments on each lot sold by him without further compensation until he has received his commission in full on each particular parcel. Thereafter, he shall receive a commission of two and one-half per cent (2 1/2) for all payments he collects. Party of the first part agrees to furnish deed *124 and abstract to parcel purchasers when parcels are paid for in full. Party of the second part shall render a statement of the collections made on or before the 10th day of each month for the previous month and remit to party of the first part its percentage of the amounts collected for it. Party of the second part agrees to maintain one or more Sales Offices, ample billboards and signs, to furnish contracts for deed, to pay for all advertising, to pay all Salesmen's Commissions and various sales expenses. It is expressly understood and agreed that all contracts of sale and deeds to any parcel or parcels of said tracts shall be subject to the following conditions and reservations which shall be incorporated in the contract of sale and deeds thereunder, to-wit: "Vendor hereby reserves one-fourth of the one-eighth royalty on oil, gas and other minerals in and under said land, but Vendee shall have the right to make any mineral lease he sees fit thereon provided that, a royalty of one-thirty-second of the value at the well or mine of all oil, gas or other minerals produced therefrom, as and when produced, shall be made payable to Vendor, his heirs or assigns by the terms of said lease. *125 All bonuses or rentals obtained shall be the property of Vendee or his assigns." Witness our Hands on duplicate originals this day of 1939. A.D., at Houston, Texas. (Signed) Allen C. Hutcheson Individually and as Agent and Attorney in Fact. (Signed) Albert Perkins Witnesses: Such contract was carried out. The property was surveyed, developed, subdivided and sold in separate parcels. Each petitioner, in his respective income tax return, accounted for certain moneys, received from the operation of said contract. In 1935, the petitioners, Rosalie H. Bosworth and Palmer Hutcheson, entered into a five-year mineral lease of certain separate property in Liberty County, Texas. The lease expired in 1940 without production. At the time of the execution of the lease the petitioners received a cash consideration which they reported on their separate tax returns for 1935 as separate income and deducted depletion of 27 1/2 per centum. The depletion was restored by respondent as the separate income of each petitioner in the year 1940. The petitioners were married and living with their respective spouses during the period involved. Opinion The first issue is whether *126 the petitioners were engaged in the business of selling real estate in the taxable year. Respondent determined that certain real estate was held by petitioners primarily for sale to customers in the ordinary course of a trade or business and that the admitted gain from its sale was taxable as ordinary income to them. Sec. 117, Int. Rev. Code. The petitioners challenge the correctness of that determination. They, of course, have the burden of proof. They contend that they were merely liquidating a capital asset and are entitled to the benefit of the capital gain rate. The question whether one is engaged in a trade or business is not always easy of determination. Decisions in other cases may furnish a guide but not a rule. The answer, in the last analysis, rests in the facts and circumstances involved in each case. Though it is clear that petitioners had other occupations engaging their principal time and activity, the immediate question with which we are concerned still remains. Cf. Higgins v. Commissioner, 312 U.S. 212. Petitioners admit that Albert Perkins, with whom their contract of July 1939 was made, was in the real estate business. They contend, *127 however, that such contract establishes that they were not so engaged. The fact that petitioners devoted little time to the project, we think, does not help petitioners. Richards v. Commissioner, 81 Fed. (2d) 369; Welch v. Solomon, 99 Fed. (2d) 41; Neils Schultz, 44 B.T.A. 146. Except that it was carried out according to its terms, little evidence was presented as to what was done under their contract with Perkins. The testimony was that some lots were sold prior to, during and subsequent to 1940, but the number was not given. Under the contract Perkins was to develop the tract of land at his own expense and risk of loss; he was to maintain one or more sales offices, ample billboards and signs; to pay all advertising and salesmen's commissions; to fix the price of each parcel subject to the approval of the petitioners; to furnish contracts for deeds; to collect the moneys and to receive a percentage of the profits after certain expenses had been paid. Petitioners were to furnish a survey of the proposed development and retain title to the property until the parcels composing it were sold *128 and completely paid for, when they, at their expense, furnished deeds therefor. Monthly statements of collections to the petitioners together with a remittance of the percentage thereof due them were required. Petitioners rely on Phipps v. Commissioner, 54 Fed. (2d) 469; and United States v. Robinson, 129 Fed. (2d) 297. Neither of those cases, we think, is decisive here. The question with which we are concerned is wholly factual and the facts here are readily distinguishable from those in both these cases. In our opinion, the following cases are more nearly in point: Commissioner v. Boeing, 106 Fed. (2d) 305; cert. denied, 308 U.S. 619; Ehrman v. Commissioner, 120 Fed. (2d) 607; cert. denied, 314 U.S. 668; Welch v. Solomon, supra;Richards v. Commissioner, supra.We think the petitioners have, at least, failed to establish error in respondent's determination that they were engaged in the real estate business in 1940 in connection with the property *129 with the tax on the gain on the sale of which we are here concerned. Accordingly, on this issue we sustain the respondent. Upon this conclusion, the position of the petitioners on the second issue apparently is that by devoting their separate property to such real estate business, it thereby underwent such a substantial mutation or change in character as to render its proceeds upon sale community income. We disagree. Certainly the property when committed to this project did not become "so mingled and confused that it * * * lost its capacity to be identified". Crabb et al. v. Commissioner, 136 Fed. (2d) 501, affirming 47 B.T.A. 916. In our opinion, therefore, the commitment and devotion of this separately held property to a real estate business did not change the character of the proceeds of its sale into community income. And this is so even though the relationship between petitioners and Perkins in that real estate business was that of joint adventurers. Dolores Crabb, 41 B.T.A. 686; affd., 119 Fed. (2d) 772, May 5, 1941, (remanded for further hearing), 121 Fed. (2d) 1015, *130 July 25, 1941, 47 B.T.A. 916 (rehearing), affd., 136 Fed. (2d) 501, cited supra. Respondent is affirmed on this issue. The third issue involves the propriety of Commissioner's action in restoring to income in 1940 depletion previously deducted from a bonus received on a mineral lease which expired without production. The petitioners concede the authorities uphold the respondent's treatment of the restored depletion. Crabb et al. v. Commissioner, 119 Fed. (2d) 772, supra; Douglas v. Commissioner, 134 Fed. (2d) 762; ,sneed v. Commissioner, 119 Fed. (2d) 767; rehearing denied, 121 Fed. (2d) 725; cert. denied, 314 U.S. 686; Dolores Crabb, 47 B.T.A. 916, affd., 136 Fed. (2d) 501, supra. We follow these authorities and sustain the respondent. The last issue is whether the restored depletion is to be treated as separate or community income. The petitioners contend that it is community income and that respondent erred *131 in treating it as separate income. The petitioners argue that this question has not been directly passed upon by the Circuit Court of Appeals. The cases of O'Connor v. Commissioner, 110 Fed. (2d) 652, Commissioner v. Wilson, 76 Fed. (2d) 766; Douglas v. Commissioner, supra; and Sneed v. Commissioner, supra, cited by respondent, do not, in our opinion, specifically involve the question of whether restored income is to be treated as separate or community property. In our decision upon remand, in the case of Dolores Crabb, supra, we directly held that restored depletion originally taken on an unproductive oil and gas lease on separate property retained its character as separate income. Although in our original decision, (41 B.T.A. 686) supra, we did not specifically pass on the question, the issue was raised on appeal in the Circuit Court (119 Fed. (2d) 772) supra. The court's opinion shows that among the questions raised by the taxpayer was the following: "3. Is the restored income the individual income of the sisters, *132 or is it community income of each and her husband?" By its affirmance we must assume the court passed upon this issue and approved the respondent's treatment of the retored income as separate, even though the Circuit Court did not discuss this issue in affirming our decision on the remand. We hold that the respondent properly treated the restored depletion as separate income and the petitioners fail on this issue. Decisions will be entered for the respondent.